UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Jose Vidal Carcamo,                          )        C/A No. 9:26-cv-00141-MGL-MHC
                                             )
                        Petitioner,          )
                                             )        **REPORT AND RECOMMENDATION**
        v.                                   )
                                             )
Field Officer Director, U.S. Immigration and )
Customs Enforcement,                         )
                                             )
                        Respondent.          )
                                             )

Petitioner Jose Vidal Carcamo ("Petitioner"), represented by counsel, petitions the court

for a writ of habeas corpus under 28 U.S.C. § 2241. *See* ECF No. 1. Petitioner also moves for a

Temporary Restraining Order or, in the Alternative, Preliminary Injunction. ECF No. 3. The Court

issued an Order to Show Cause requiring Respondent Field Office Director, U.S. Immigration and

Customs Enforcement ("ICE") to file a Return to the Petition and ordering expedited briefing on

the Motion. ECF No. 11; *see* 28 U.S.C. § 2243. Respondent filed a Return to the Petition, ECF

No. 15, and a Response in Opposition to the Motion, ECF No. 18. Petitioner has filed a Traverse

in support of the Petition, ECF No. 19, and a Reply in support of the Motion, ECF No. 20. The

Petition and Motion are ripe for review.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), all

pretrial proceedings in this matter have been assigned to the undersigned. Because the Motion and

Petition are dispositive, this Report and Recommendation is entered for review by the District

Judge. For the reasons that follow, the undersigned recommends that the Petition be granted and

that the Motion be denied as moot.

## I.    BACKGROUND

Petitioner is a native and citizen of Honduras. ECF No. 15-3 at 1 ¶ 4. On December 27, 2016, ICE Enforcement and Removal Operations ("ERO") encountered Petitioner at Moshannon Valley Correctional Processing Center in Philipsburg, Pennsylvania where he was incarcerated subsequent to a conviction in the United States District Court, Northern District of West Virginia, for the offense of aiding and abetting cocaine distribution, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2. ECF No. 15-3 at 1 ¶ 5. For that offense, Petitioner was sentenced to 13 months imprisonment. *Id.* At the time of the encounter, Petitioner claimed he entered the United States in 2008 at or near Laredo, Texas without being admitted or paroled by an immigration officer. *Id.* at 1 ¶ 6.

On or about September 15, 2017, Petitioner entered ICE custody. *Id.* at 2 ¶ 7. On September 22, 2017, ICE/ERO ordered Petitioner removed from the United States to Honduras pursuant to § 238(b) of the Immigration and Nationality Act (INA), 8 U.S.C. §1228(b), based on his conviction, which rendered him removable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). ECF No. 15-3 at 2 ¶ 7 (also citing INA § 101(43)(U), (B), and 8 U.S.C. § 1101(a)(43)(U), (B)).

Petitioner was referred to the United States Citizenship and Immigration Services ("USCIS") for review and was further referred to an Immigration Judge in York, Pennsylvania, for review of USCIS's decision. *Id.* at 2 ¶ 8. The Immigration Judge reversed USCIS's findings, thus permitting Petitioner to apply to have his removal to Honduras withheld or deferred. *Id.* On November 26, 2018, the Immigration Judge denied Petitioner's applications. *Id.* at 2 ¶ 9. Petitioner appealed that decision to the Board of Immigration Appeals ("BIA"). *Id.* On May 10, 2019, the BIA remanded Petitioner's case back to the Immigration Judge for further proceedings and

issuance of a new decision. *Id.*

On remand, the Immigration Judge issued an order dated January 9, 2020, deferring Petitioner's removal to Honduras under the statute and regulations implementing the Convention Against Torture ("CAT"). *Id.* at 2 ¶ 10; ECF No. 1-1. On February 12, 2020, ICE/ERO released Petitioner from detention on an Order of Supervision ("OSUP") after determining removal to a third country was not viable. ECF No. 15-3 at 2 ¶ 10. Petitioner complied with all the terms of his OSUP and checked in annually with ICE at its substation in Charleston, South Carolina, each year following his release from detention. ECF No. 1 at 4 ¶¶ 16–18.

On January 14, 2026, Petitioner reported to the ICE/ERO office in Charleston, South Carolina, for his annual check-in and was taken into custody. ECF No. 15-3 at 2 ¶ 11. At that time, Petitioner was provided with a "Notice of Revocation of Release," which provided as follows:

> This letter is to inform you that your case has been reviewed and it has been determined that you will be kept in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case. ICE has reviewed your case and determined that removal from the United States is warranted.
>
> Based on the above and pursuant to 8 CFR 241.13, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given the opportunity to respond to the reasons for the revocation and to provide any evidence to demonstrate that your removal is unlikely. If you are not released following the informal interview, you will receive notification of a new review, which will occur within approximately three months from the date of this notice.
>
> You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with the ICE's efforts to remove you by taking whatever actions ICE requests to effect your removal. You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 USC Section 1253(a).

ECF No. 15-2 at 1.

At or around 1:20 p.m. on January 14, 2026, counsel for Petitioner filed the instant habeas Petition in this District Court pursuant to 28 U.S.C. § 2241, asserting that Petitioner is in custody in violation of the Constitution or laws or treaties of the United States. ECF No. 1. Later that day, at 2:37 p.m., Petitioner departed Charleston bound for the Folkston Immigration Processing Center because of a lack of detention facilities in South Carolina where ICE can detain someone for over 72 hours. ECF No. 15-3 at 2.

The Court ordered the Government to file a return to the Petition no later than January 23, 2026, with any reply by Petitioner due by January 26, 2026. ECF No. 11. The Government and Petitioner have now provided that briefing. *See* ECF Nos. 15, 19.

## II.     LEGAL STANDARD

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2241(c)(3). If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243. "The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248.

"A habeas petitioner who is physically confined must name [his] 'immediate custodian' as the habeas respondent, and must file the habeas petition in the 'district of confinement.'" *Kanai*,

4

638 F.3d at 255 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 446–47 (2004)). A subsequent transfer "does not strip the court of jurisdiction over the petition." *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434 (3d Cir. 2021); *see Ozturk v. Hyde*, 136 F.4th 382, 392 (2d Cir. 2025); *Lennear v. Wilson*, 937 F.3d 257, 263 n.1 (4th Cir. 2019) ("When the 'Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court [where the petitioner filed a petition] retains jurisdiction.'") (alterations in original) (quoting *Rumsfeld*, 542 U.S. at 441); *see, e.g.*, *Darwich v. Kemerling*, No. 3:25-CV-876-MOC, 2025 WL 3653340, at *3–5 (W.D.N.C. Dec. 17, 2025).[1]

### III.    DISCUSSION

Petitioner offers three reasons why his detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). First, Petitioner contends that ICE violated its own regulations by failing to provide adequate notice of the reasons for revocation of his release and failed to sufficiently demonstrate changed circumstances that render his removal significantly likely in the reasonably foreseeable future. ECF No. 1 ¶¶ 43–52. Second, Petitioner contends that his current detention is unconstitutional under *Zadvyas v. Davis*, 533 U.S. 678 (2001), and the U.S. Constitution because his removal period ended in 2020 and there is no significant likelihood of his removal in the reasonably foreseeable future. ECF No. 1 ¶¶ 72–79. Third, Petitioner argues that, to the extent ICE intends to deport him to a third country, it "violates statutory and constitutional due process to remove or detain [Petitioner] to hold him for removal to a third country unless or until he is given the opportunity to seek relief from removal to such third countries." *Id.* ¶¶ 80–87.

---

[1] No party disputes this Court's jurisdiction over the Petition, and it is undisputed that, at the time the Petition was filed, Petitioner was physically confined within this District and that he named his immediate custodian as the habeas respondent.

Respondent contends that ICE is authorized to detain and remove Petitioner under 8 U.S.C. § 1231(a)(6), that his continued detention is constitutionally permissible, and that he has received all process due to him under law, such that the Petition should be denied and the case dismissed. *See* ECF No. 15. Respondent also contends that the Petition should be denied, or else stayed, on the grounds that Petitioner is a class member in a nationwide class certified in *D.V.D. v. U.S. Department of Homeland Security*, Civ. 25-10676-BEM (D. Mass.). ECF No. 15.

**A.  Petitioner's Detention under 8 U.S.C. §1231(a)**

Respondent contends that ICE lawfully detained Petitioner pursuant to 8 U.S.C. § 1231(a). *See* ECF No. 15 at 4. Section 1231(a) provides that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" (the "removal period") and that "the Attorney General shall detain the alien" during the removal period. 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Except when the noncitizen is detained in a case outside the immigration process or when a court orders a stay of removal, the removal period begins when the removal order becomes administratively final. *Id.* § 1231(a)(1)(B). If the noncitizen does not leave or is not removed during the removal period, then the noncitizen "shall be subject to supervision under regulations prescribed by the Attorney General" pending their removal. *Id.* § 1231(a)(3). But certain noncitizens, including those who are removable under 8 U.S.C. § 1227(a)(2), may be detained beyond the removal period or, if released, shall be subject to the terms of supervision in § 1231(a)(3). *Id.* § 1231(a)(6) ("Inadmissible or criminal aliens).

In *Zadvydas v. Davis*, the Supreme Court considered whether the Government may detain a noncitizen under 8 U.S.C. § 1231(a)(6) "*indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." 533 U.S. at 682. The two noncitizen-petitioners in *Zadvydas* received removal orders and had been detained well beyond their removal

periods under 8 U.S.C. § 1231(a)(6), partly because their native countries and other countries to which they had connections had refused to accept them. *Id.* at 684–86. The petitioners challenged the extent of the Attorney General's authority to detain them on a seemingly indefinite basis given the unlikelihood of the Government securing their removal. *Id.* at 684–86, 688–89.

In assessing that authority, the Supreme Court recognized that "Congress has 'plenary power' to create immigration law, and that the Judicial Branch must defer to Executive and Legislative Branch decisionmaking in that area." *Id.* at 695. "But that power," the Court explained, "is subject to important constitutional limitations." *Id.* And "an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent." *Id.* at 696 (citation omitted). Considering the significant liberty interest at stake and the lack of "congressional intent to authorize indefinite, perhaps permanent, detention," *id.* at 699, the Court held that a noncitizen's detention pending removal is presumptively reasonable only for six months (inclusive of the removal period), after which, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing," *id.* at 701.

Here, Petitioner contends that his presumptively reasonable period expired in 2020—six months after his withholding of removal order became administratively final on January 9, 2020— and that ICE has provided no factual basis to believe that his removal will occur in the reasonably foreseeable future. ECF No. 1 at 12–13 ¶¶ 73–79. Specifically, Petitioner argues that he cannot be removed to Honduras, and ICE has given him no notice of any third country removal, requested that he complete any travel document requests, identified any third country to which it intends to remove him, or even identified a third country to which it can remove Petitioner in the reasonably

foreseeable future. *Id.*; ECF No. 19 at 2. Petitioner thus argues that because his removal is not significantly likely in the reasonably foreseeable future, his current detention is unlawful. ECF No. 1 at 13 ¶¶ 77–79. Respondent contends that Petitioner's argument is premature because he has been detained only since January 14, 2026, and that the detention complies with ICE regulations. ECF No. 15 at 5–10. For the reasons set forth below, the undersigned finds that Petitioner's argument is not premature and that he has met the "good reason" requirement under *Zadvydas*.

### 1.  The Six-Month Presumption

Respondent first suggests that Petitioner's argument under *Zadvydas* is "premature" because he has been detained only since January 14, 2026. ECF No. 15 at 5–6. The premise of this argument is that Petitioner's six-month period restarted when he was detained on January 14, 2026. *See id.* Some courts agree with that premise, finding that the six-month period restarts upon re-detention, *see, e.g.*, *Abedi v. Carter*, No. 25-3141-JWL, 2025 WL 3209009, at *1 (D. Kan. Oct. 6, 2025), or pauses while the noncitizen is not detained and resumes upon re-detention, *see, e.g.*, *Rodriguez-Guardado v. Smith*, 271 F. Supp. 3d 331, 335 n.8 (D. Mass. 2017) (citation omitted).

Other courts, however, "broadly agree that 'the six-month period [under *Zadvydas*] does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again.'" *Diaz-Ortega v. Lund*, No. 1:19-CV-670-P, 2019 WL 6003485, at *7 n.6 (W.D. La. Oct. 15, 2019) (quoting *Sied v. Nielsen*, 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018)), *report and recommendation adopted,* No. 1:19-CV-670-P, 2019 WL 6037220 (W.D. La. Nov. 13, 2019); *see Montoya Palacios v. Baker*, No. CV GLR-25-4045, 2026 WL 171690, at *4 (D. Md. Jan. 22, 2026) (finding that "Montoyo Palacios's six-month period did not restart upon his re-detention on December 8, 2025," his "six-month period expired in March 2024, and his challenge against his detention is not premature"); *Nguyen*

*v. Lyons*, No. 25-CV-631-MSM-PAS, 2026 WL 125093, at *2 (D.R.I. Jan. 16, 2026) ("Respondents' argument that Mr. Nguyen's claim is raised prematurely under the *Zadvydas*-framework misses the mark. This case is not about the ability to detain in the first instance, as was the case in *Zadvydas*, but the ability to re-detain Mr. Nguyen after he was issued a final order of removal, detained, and subsequently released." (internal citations and quotation marks omitted)); *Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *4 (N.D. Ind. Dec. 29, 2025) (concluding that "the government cannot rely on the *Zadvydas* period to justify" petitioner's re-detention and explaining that "applying a six-month period of presumptive reasonableness to every subsequent period of detention would go against the concerns in *Zadvydas*"); *Zavvar v. Scott*, No. TDC-25-2104, 2025 WL 2592543, at *4 (D. Md. Sept. 8, 2025) ("[T]here is, at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period."); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 702 (S.D. Tex. 2025) ("The government's contention that it may avoid the holding of *Zadvydas* and re-start the six-month presumptively constitutional detention clock by simply releasing and then re-detaining a noncitizen has no basis in either the statutes, the regulations, or *Zadvydas* itself.").

The undersigned agrees with the latter position and finds that the presumptively constitutional six-month period under *Zadvydas* did not restart upon his re-detention on January 14, 2026. Rather, his six-month period expired in 2020, and his challenge against his detention is not premature.[2] *See Montoya Palacios*, 2026 WL 171690, at *4.

---

[2] Courts within the Fourth Circuit have found that "the six-month presumption of reasonableness shifts the burdens between the Government and the noncitizen-detainee, but it does not prohibit judicial review of a noncitizen's detention for six months." *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375–76 (D. Md. 2025). Therefore, even if Petitioner's presumptive six-month period has not yet expired, "his Petition still would not be premature." *Montoya Palacios*, 2026 WL 171690, at *4 n.4.

### 2.    The Relevant Regulations

Respondent next argues that the Petition should be denied because ICE's revocation of Petitioner's 2020 OSUP comports with the "Post-Order Custody Regulations ('POCR') contained at 8 C.F.R. § 241.4." ECF No. 15 at 7–10. Petitioner, however, contends that a different regulation—8 C.F.R. § 241.13—controls ICE's decision to re-detain a noncitizen who has been granted supervised release and that "§ 241.4 does not apply if ICE releases a post-order detainee— like [Petitioner]—on an OSUP after determining that there is no significant likelihood of removal in the reasonably foreseeable future." ECF No. 19 at 3–4. Upon review, the undersigned agrees with Petitioner.

As an initial matter, the Notice of Revocation of Release provided to Petitioner cites only 8 C.F.R. § 241.13 as the basis for the revocation, notwithstanding Respondent's suggestion otherwise. *See* ECF No. 15-2 at 1 ("Based on the above and pursuant to 8 CFR 241.13, you are to remain in ICE custody at this time."); *see also* ECF No. 15 at 8 (Respondent's argument that "the Supervisory Deportation and Detention Officer (SDDO) issued Petitioner a written Notice of Revocation of Release on January 14, 2026, explaining that ICE was revoking his release pursuant to 8 C.F.R. §§ 241.4/241.13"). Thus, at the time of the revocation, it appears ICE was applying only § 241.13.

Moreover, review of the two regulations, which "work in tandem to govern the release of a noncitizen who is detained under § 1231(a)," indicates that § 241.4 "governs every release *except* for a release based on a determination that an alien cannot be removed in the reasonably foreseeable future." *Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *4 (N.D. Ind. Dec. 29, 2025). Section 241.4(b)(4) expressly provides that the "custody review procedures in this section *do not apply* after the Service has made a determination, pursuant to the procedures

10

provided in 8 CFR 241.13, that there is *no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future*." 8 C.F.R. § 241.4(b)(4) (emphasis added). Section 241.13 confirms this:

> *Section 241.4 shall continue to govern* the detention of aliens under a final order of removal, including aliens who have requested a review of the likelihood of their removal under this section, *unless* the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future.

8 C.F.R. § 241.13(b)(1) (emphasis added).

Section 241.4 makes clear that once there is a significant likelihood that the alien may be removed in the reasonably foreseeable future, a noncitizen's detention is again governed by § 241.4, and not § 241.13:

> [I]f the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4). "In other words, even if a noncitizen would otherwise continue to be detained under the discretionary factors in § 241.4, he may be entitled to release under § 241.13 upon a showing that his removal is not reasonably foreseeable."[3] *Pho*, 2025 WL 3750684, at *4

---

[3] Section "241.13 was added to the regulations in order to implement the Supreme Court's decision in *Zadvydas*." *Pho*, 2025 WL 3750684, at *4 (citing Continued Detention of Aliens Subject to Final Orders of Removal, 66 FR 56967-01 ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future."); *see Castaneda v. Perry*, 95 F.4th 750, 756 n.3 (4th Cir. 2024) ("In response to *Zadvydas*, DHS promulgated 8 C.F.R. § 241.13, which 'establishes special review procedures for those aliens' who have 'provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.'" (quoting 8 C.F.R. § 241.13(a))).

11

(citing 8 C.F.R. § 241.13(a)(1)).

Respondent acknowledges that in January 2020 an Immigration Judge issued an order "deferring Petitioner's removal to Honduras under" CAT, and that on February 12, 2020, "ICE/ERO released Petitioner from detention on an Order of Supervision ('OSUP') after determining removal to a third country was not viable." ECF No. 15 at 2. Therefore, the revocation of that release is governed by the standards in § 241.13.

Under the procedures in § 241.13, release may be revoked for one of two reasons: (1) violating the conditions of release or (2) "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i). If ICE elects to revoke a noncitizen's release under 8 C.F.R. § 241.13(i)(2), the noncitizen must "be notified of the reasons for revocation of his or her release," and ICE must "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). At that interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.*

"Once ICE releases a noncitizen on an Order of Supervision, ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *3 (D. Minn. Aug. 25, 2025); *see Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) ("ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future.") (citing 8 C.F.R. § 241.13(i)(2)).

### 3. Likelihood of Removal

Petitioner contends that he was not given adequate notification of the reasons for the revocation of his release. ECF No. 1 ¶¶ 27–31, 50–51. ICE's regulations require that when a noncitizen is notified of a release revocation, the "reasons" for that revocation must be stated in the notification. 8 C.F.R. § 241.13(i)(3). Here, the notice to Petitioner provided the following reasons:

> This decision [to revoke release] has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case. ICE has reviewed your case and determined that removal from the United States is warranted.

ECF No. 15-2 at 1.

"Besides merely parroting the regulatory text governing re-detention, ICE's notice to [Petitioner] provides zero reasons as to what changed circumstances exist such that [Petitioner's] removal is now significantly likely in the reasonably foreseeable future." *Roble*, 2025 WL 2443453, at *3 (citing 8 C.F.R. § 241.13(i)(2)). The notice does not state, for example, that ICE had received or was seeking a travel document for Petitioner. *Cf. Chavez Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *6 (S.D. Fla. Aug. 8, 2025) ("The Notice states that Petitioner's OSUP was revoked "based on a review of [his] file and/or ICE has received a Travel Document to affect [his] removal.""); *Tran v. Baker*, No. 1:25-cv-01598-JRR, 2025 WL 2085020, at *4–5 (D. Md. July 24, 2025) ("Per the Notice of Revocation of Release, the Government advised Petitioner that her changed circumstance is that ICE has determined she can be expeditiously removed pursuant to the order of removal and that her case is under review with the Government of Vietnam for issuance of a travel document."). Nor does the notice state—as Respondent avers in his Affidavit submitted in response to the Petition—that ICE "took Petitioner into custody to effectuate removal from the U.S. to an alternative country." ECF No. 15-3 at 2 ¶ 11.

13

Rather, the notice summarily asserts that changed circumstances render Petitioner's removal from the United States significantly likely in the reasonably foreseeable future and that removal "is warranted." ECF No. 15-2 at 1. The language in the notice simply mirrors the legal standard applicable to detaining a noncitizen released on an Order of Supervision. However, "[p]roviding a notice that simply recites the language of the regulation does not satisfy the Government's obligation to provide the 'reasons' why [Petitioner's] Order of Supervision was revoked." *Roble*, 2025 WL 2443453, at *3 (citing 8 C.F.R. § 241.13(i)(3)); *see Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 780–84 (D. Minn. 2025) (distinguishing between the "reasons for revocation" mentioned in § 241.13(i)(3) and the categories of revocation listed in § 241.13(i)(1) and (2), and concluding—based on the regulation's text, the regulatory context, canons of construction, and case law—that notification "of the reasons for revocation" requires ICE to do more than state that circumstances have changed). The notice provided to Petitioner did not provide the reasons for the revocation of his release and, therefore, did not comply with § 241.13(i)(3).

The essence of due process is notice and an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *Baldwin v. Hale*, 68 U.S. 223, 233 (1863) ("Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."). ICE's own regulations contemplate that a noncitizen will have an opportunity to "respond to the reasons for revocation stated in the notification" during the initial informal interview after re-detention. 8 C.F.R. § 241.13(i)(3). However, Petitioner cannot be expected to "respond to the reasons for revocation stated in the notification" if the notification does not state any reasons for revocation.

Not only does Respondent not identify in the Notice any changed circumstances that make Petitioner's removal significantly likely in the reasonably foreseeable future, Respondent also does

14

not provide any arguments or evidence in response to the Petition identifying any changed circumstances or otherwise arguing that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. *See* ECF No. 15.

Many courts have found that, in cases involving revocation of supervised release that fall outside of the *Zadvydas* 6-month period, "the regulations at issue . . . place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future." *Roble*, 2025 WL 2443453, at \*4; *see Hernandez Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at \*3 (E.D. Tex. Aug. 2, 2025) ("The[] regulations clearly indicate, upon revocation of supervised release, it is [ICE's] burden to show a significant likelihood that the alien may be removed. Other cases have indicated the same upon revocation of release"); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150–53 & n.2 (D. Mass. 2025) (finding that *Zadvydas* 6-month presumption not applicable where alien is "re-detained" after having been on supervised release, that respondents failed to meet their burden to show a substantial likelihood of removal is now reasonably foreseeable, and that petitioner's detention was unlawful based on "ICE's violations of its own regulations"); *Tadros v. Noem*, No. 25-cv-4108, 2025 WL 1678501, \*3 (D.N.J. June 13, 2025) (finding 6-month presumption had lapsed while petitioner was on supervised release, such that it was respondent's burden to show removal is likely in the reasonably foreseeable future). Moreover, even if the *Zadvydas* presumptively reasonable six-month period has not lapsed, the presumption of reasonableness "may be overcome by proof that removal is not reasonably foreseeable." *Zavvar*, 2025 WL 2592543, at \*6.

Respondent does not dispute Petitioner's evidence that he cannot be removed to Honduras in light of his deferral of removal under CAT. *See* ECF No. 1 ¶ 77; ECF No. 1-1; ECF No. 15. Nor does Respondent dispute Petitioner's allegations that he has complied with the terms of his order

15

of supervision for over five years and that he has not been notified of any attempts to remove him to a third country. *See* ECF No. 1 at 8 ¶ 15h; ECF No. 15. Respondent asserts, however, that Petitioner was taken "into custody to effectuate removal from the U.S. to an alternative country." ECF No. 15-3 at 2 ¶ 11. But Respondent does not identify what the "alternative country" is or what steps, if any, the government has taken to effectuate Petitioner's removal. Indeed, Respondent has not made any arguments regarding changed circumstances, nor does Respondent provide any evidence demonstrating a "significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

Based on the evidence and arguments before the Court, the undersigned finds that Petitioner has produced evidence showing that there is not a significant likelihood that he will be removed in the reasonably foreseeable future and that Respondent has not rebutted this evidence or met its burden under 8 C.F.R. § 241.13(i)(2). Accordingly, the undersigned concludes that Petitioner's detention violates his due process rights as interpreted under *Zadvydas*. *See Montoya Palacios*, 2026 WL 171690, at *4 (granting habeas petition upon finding removal did not appear likely to occur in the reasonably foreseeable future and that petitioner's re-detention following supervised release violated his due process rights); *Solis Nolasco v. Noem*, No. CV GLR-25-3847, 2026 WL 25002, at *5 (D. Md. Jan. 5, 2026) (finding, within weeks of petitioner's re-detention, that continued detention violated petitioner's due process rights where petitioner provided good reason to believe that his removal to Mexico is not likely to occur in the reasonably foreseeable future, and the government's bare assertions that his removal to Mexico is likely to occur in the reasonably foreseeable future, without more, were insufficient to rebut petitioner's contrary showing); *Zavvar*, 2025 WL 2592543, at *8 (finding, where petitioner established that there is no significant likelihood that he will be removed in the reasonably foreseeable future, "his detention

16

is not authorized by 8 U.S.C. § 1231(a)(6) and thus also violates due process" (citing *Zadvydas*, 533 U.S. at 692, 699–700).

### B. Respondent's Remaining Arguments

In the Return, Respondent contends that this case should be dismissed or stayed in light of *D.V.D. v. U.S. Department of Homeland Security*, 778 F. Supp. 3d 355 (D. Mass. 2025), a case in which the district court certified a nationwide non-opt out class of individuals who are presently subject to a final notice of removal and who DHS "has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed." *Id.* at 378. The court issued a preliminary injunction directing that certain procedural steps occur before any removal of a class member to a third country. *Id.* at 392–93. The United States Supreme Court subsequently stayed the preliminary injunction. *Dep't of Homeland Security v. D.V.D.*, 145 S. Ct. 2153, 2153 (2025).

Respondent argues that "this Court should avoid providing Petitioner with relief that eventually may conflict with the relief, if any, ultimately provided to the *D.V.D.* class." ECF No. 15 at 13. Respondent also contends that the Court "should decline to exercise jurisdiction over the Petition as a matter of comity because the District of Massachusetts has certified a class of people that will cover the same claim he pursues in South Carolina." *Id.* at 14. In his Traverse, Petitioner contends that he "cannot be part of any such class because ICE has taken no steps to remove him to a third country" and "is not subjecting him to third-country removal." ECF No. 19 at 7.

In the Petition's Third Cause of Action, Petitioner asserts that it "violates statutory and constitutional due process to remove or detain [Petitioner] to hold him for removal to a third country unless or until he is given the opportunity to seek relief from removal to such third

countries." ECF No. 1 at 14 ¶ 87. In the Prayer for Relief, however, Petitioner asks for an Order requiring Respondent to release Petitioner, but he does not request any procedural steps or other relief regarding third-party removal.

There is no evidence before the Court of any impending third-country removal, such that it is not necessary to consider the arguments made in Petitioner's "Third Cause of Action." Moreover, because Petitioner only seeks relief from detention, he seeks relief that is not sought on behalf of the class in *D.V.D.* Accordingly, the undersigned does not find *D.V.D.* to be a basis upon which to dismiss or stay the Petition as to Petitioner's request for relief from detention. *See Zavvar*, 2025 WL 2592543, at *3 (finding that "where Zavvar primarily seeks relief from detention pending any removal, he seeks relief that is not sought on behalf of the class in *D.V.D.*," such that the court will not dismiss or stay the Petition as to the request for relief from detention); *see also Solis Nolasco*, 2026 WL 25002, at *6 (granting petitioner's habeas petition as to his detention claim but denying, without prejudice, the petition as to petitioner's claim regarding his impending third country removal to Mexico upon finding that the claim was more appropriately addressed in *D.V.D.* and petitioner did not dispute that he was a member of the *D.V.D.* class).

Finally, Respondent, citing a case where a federal prisoner filed a habeas petition seeking application of earned First Step Act time credits to his sentence, argues that, to the extent Petitioner is challenging ICE's decision to revoke his release, he must bring an action under the Administrative Procedures Act. ECF No. 15 at 10–11 (citing *Hubbard v. Carter*, No. BAH-24-729, 2025 WL 524117 (D. Md. Feb. 18, 2025)). The undersigned finds *Hubbard* neither relevant to the instant habeas petition nor persuasive support for Respondent's argument. Accordingly, the undersigned recommends that the Petition be granted for the reasons stated above.

18

## IV.     CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Petition (ECF No. 1) be **GRANTED** and that Petitioner be released from custody, subject to and in accordance with the conditions of his preexisting order of supervision. Based on the recommendation that the Petition be granted, it is further **RECOMMENDED** that Petitioner's Motion for Temporary Restraining Order or, in the Alternative, Preliminary Injunction (ECF No. 3) be denied as **MOOT**.


_____
Molly H. Cherry
United States Magistrate Judge

February 2, 2026
Charleston, South Carolina

**The parties are directed to the important notice on the next page.**

19

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).